UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MELISSA B. SARNER,**                                              Chapter 13
    Debtor                                                     Case No. 10-17487-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MELISSA B. SARNER AND
LAWRENCE E. SARNER**
    Plaintiffs
v.                                                                 Adv. P. No. 11-1253
**MASSACHUSETTS DEPARTMENT OF
REVENUE**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Emergency Motion filed by Lawrence E. Sarner ("Sarner") and Melissa B. Sarner (the "Debtor") (collectively, the "Plaintiffs") for Temporary Restraining Order and Preliminary Injunction against the Massachusetts Department of Revenue (the "MDOR"), pursuant to which they seek a temporary restraining order "prohibiting the MDOR from levying, or maintaining a levy, against back accounts of the plaintiffs [sic] because the MDOR's actions impede Melissa Sarner's ability

to perform under, and comply with, her chapter 13 plan."[1]

The MDOR filed a Response to the Plaintiffs' Motion and the Plaintiffs have filed a Reply to the MDOR's Response. The material facts necessary to resolve the Motion are not in dispute, and the Court concludes a hearing is unnecessary to determine the Motion.

## II. BACKGROUND

The Debtor filed a Chapter 13 petition on July 11, 2010. She filed her Schedules of Assets and Liabilities on August 9, 2010. On Schedule B-Personal Property, she disclosed a single bank account at Digital Federal Credit Union with a current value of $5,000. She did not disclose that the bank account was a joint account with Sarner. On Schedule D-Creditors Holding Secured Claims, she listed the MDOR with a claim of $11,425 secured by property located at 625 Old Farm Road, Franklin, Massachusetts (the "Property"). She further indicated that the debt was contingent, unliquidated and disputed.

On Schedules I and J-Current Income and Current Expenses of Individual Debtor(s), the Debtor disclosed that both she and Sarner received income from Alfa Dental Center, PC. She listed her average monthly income at $2,176; she listed Sarner's average monthly income at $7,591. She stated her monthly net income was $2,125. In her Chapter 13 plan, which she filed on August 9, 2010 with her Schedules, the Debtor did not provide for any monthly payments to the Chapter 13 trustee and stated the following: "Upon payment of the secured claim of the MDOR, its tax lien recorded on July 14, 2009 shall be dissolved

---

[1] As noted below, only Sarner had an interest in the bank accounts upon which the MDOR levied. These accounts at RBS Citizens, N.A. were not listed on the Debtor's Schedule B-Personal Property.

2

upon entry of an order discharging the debtor in this case." The Debtor, however, is not entitled to a discharge because of a Chapter 7 discharge entered in a prior case on March 5, 2010. *See* 11 U.S.C. § 1329(f)(1).

On August 19, 2010, the Court granted Dean Co-Operative Bank relief from the automatic stay to foreclose a mortgage on the Property securing a note executed by the Plaintiffs. On September 28, 2010, the Debtor filed an Amended Chapter 13 plan in which she provided for a monthly plan payment of $2,109 and disclosed that the MDOR's claim was $-0- because Dean Co-Operative Bank had conducted a foreclosure sale.[2] On February 3, 2011, the Court confirmed the Debtor's Amended Plan. On May 6, 2011, however, the Debtor filed a Third Amend Pre-Confirmation Chapter 13 Plan. She did not amend her proposed treatment of the MDOR secured claim, asserting that it had been satisfied, but she added a priority claim for the MDOR, "per PoC" in the sum of $12,077.72. The Debtor proposed to pay the priority claim of the MDOR in full.

---

[2] She stated:

No payment is being made on secured claims because Dean Cooperative Bank foreclosed its mortgage on the collateral. As a matter of law, Dean's foreclosure is subject to all superior liens, such as the IRS, MDOR and the Town of Franklin, so the debtor need not pay them. Furthermore, foreclosure rendered any subordinate liens unsecured except to the extent that there was a surplus, which must be paid to junior liens, not superior liens. [sic] *See* First Colonial Bank for Savings v. Bergeron & others, 38 Mass.App.Ct. 136 (1995); Horizon Bank and Trust Company v. Flaherty et al, 309 F.Supp. 2d 17 (D.Mass. 2004); Dexter v. Aronson, 282 Mass. 124 (1933); In re Eastmare Development Corp., 150 BR 495 (Bkrtcy.D.Mass. 1993). Dean is not entitled to a deficiency claim since the debtor's obligation on the note was discharged in her prior chapter 7 case, 08-16008; Johnson v. Home State Bank, 501 US 78 (1991).

The Debtor did not file amended Schedules I and J following the foreclosure sale of the Property. Although the Court granted the Debtor's Motion for Approval of Amended Plan in the absence of objections, the Court has not entered an order of confirmation. On July 30, 2011, the Chapter 13 Debtor filed a "Modification of Plan Prior to Confirmation." In that document, she increased her monthly plan payment to the Chapter 13 Trustee from $2,109 to $2,088. On August 12, 2011, the Plaintiffs filed the adversary proceeding against the MDOR.

### III. THE ADVERSARY PROCEEDING

A. The Complaint and Emergency Motion

In their adversary proceeding, the Plaintiffs set forth their allegations in 14 numbered paragraphs, which the Court paraphrases as follows,:

> On August 5, 2011, Lawrence Sarner sought to access funds in a bank account held at Citizens Bank, but was informed that the funds were unavailable because they had been levied by defendant. A few days later, Sarner received a letter from Citizens indicating that two accounts had been levied with respect to both Melissa and Lawrence. *See exhibit A, attached*.
>
> The tax debt to the MDOR is a joint debt arising substantially, if not entirely, from the operation by both Melissa and Lawrence of a dental practice, and is not a consumer debt. The dental practice was closed several years ago, and both Melissa and Lawrence are regular employees of another dental practice.
>
> In addition, the debt is not dischargeable within the meaning of 11 USC §523(a)(1).
>
> The debt at issue is a joint debt and to the extent that any levied funds were solely Lawrence's, the levied funds have been, and were intended to be, used by Lawrence to contribute to a portion of Melissa's plan payment, as reflected on Schedules I and J.

4

> Because of the MDOR levy, Lawrence is unable to contribute his share of the plan payment, which threatens the viability and feasibility of Melissa's plan. Melissa is not likely to be able to sustain her plan solely on her own income or if this levy continues.
>
> In addition, the levy causes damage to Melissa and Lawrence by impeding their ability to pay ongoing expenses such as food, utilities, transportation and rent.

The letter attached to the Complaint as Exhibit A was addressed to Sarner and referenced two accounts at RBS Citizens, N.A., one with funds of $1,411.48 and the other with funds of $1,089.16. Citizens Bank advised Sarner as follows:

> Please note that we have placed an extended hold on your account in the amount of $10,079.08 which will remain in effect until 10/5/2011.
>
> If the Levy is not released by the Department of Revenue within twenty-one (21) days from the date of this letter, the amount indicated above will be submitted to the Department of Revenue as require by law.

The Plaintiffs seek three forms of relief in their Complaint: a finding that the MDOR is in contempt of her plan (Count I); a permanent injunction against any non-bankruptcy forms of debt collection by the MDOR until the completion of the Debtor's plan (Count II); and damages for violation of the automatic stay (Count III).

In the Emergency Motion, the Plaintiffs reiterate the facts alleged in the Complaint, while recognizing that Sarner is not protected by the co-debtor stay as the joint obligation to the MDOR is not a consumer debt. *See* 11 U.S.C. §1301(a). Nevertheless, the Plaintiffs maintain the following:

> [I]t is well settled that pursuant to 11 USC §105, the bankruptcy court may employ its equitable powers to further the principles and purposes of the bankruptcy code. While §105 is not a "roving writ" and the equitable powers

must be confined to preservation of an identifiable right in the bankruptcy code itself, *see* In re Jamo, 283 F.3d 392 (1st Cir. 2002), it has been held consistently that such power includes the power to extend the automatic stay to non-debtor parties by way of an injunction.

B. The MDOR's Response

The MDOR filed a Response, together with the Affidavit of Allen Rosenberg, a Manager of the MDOR's Bankruptcy Unit. Mr. Rosenberg attested to the release of the tax levy on August 19, 2011, adding "Citizens Bank did not surrender any property, including without limitation, any funds from Lawrence's account at that bank, to MDOR." He also stated that when a taxpayer contacts the MDOR for purposes of discussing a payment agreement and an agreement is reached, the MDOR generally suspends involuntary collection activities.

In its Response, the MDOR stated that the Emergency Motion must be denied because this Court lacks subject matter jurisdiction and power to enjoin the MDOR from collecting a personal income taxes from a non-debtor, citing Stern v. Marshall, __ U.S. __, 131 S.Ct. 2594 (2011). It added that the Plaintiffs failed to meet the standard four-part test for injunctive relief, particularly as they seek to enjoin the collection of tax liabilities from a non-debtor that may have accrued since the petition date. The MDOR stated:

> While Section 105(a) of the Bankruptcy Code does grant the Bankruptcy Court broad powers to issue an order "necessary or appropriate to carry out the provisions" of the Code, the use of that power to stay a third party action not involving the debtor is an extraordinary exercise of discretion that requires at least unusual circumstances, which are not involved in this case. The nondebtor's joint and several liability with a debtor for personal income taxes, even with a practical need for a non-debtor spouse to assume a greater relative share of household expenses for a debtor's chapter 13 plan to be

feasible, are not merely "usual circumstances" but may be generic to a debtor/non-debtor married couple.

In addition to its jurisdictional argument, the MDOR relied upon the Tax Injunction Act, 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."), to argue that this Court is prohibited from enjoining, suspending or restraining the levying and collection of taxes from a non-debtor, such as Sarner. It argued that Sarner is the real party in interest, and under Fed. R. Civ. P. 17(a), made applicable to this proceeding by Fed. R. Bankr. P. 7017, the Debtor may not sue in his name. Although the MDOR recognized the limits of its sovereign immunity via à vis the Debtor, it asserted that Sarner's suit is excluded from the Article I, § 8, cl. 4 exception to the Eleventh Amendment to the Constitution and 11 U.S.C. § 106(a)(1).

With respect to the specific counts of the Plaintiffs' Complaint the MDOR argued that the Plaintiffs have no likelihood of success on the merits. It pointed to the lack of a confirmation order as predicate to a finding of contempt under Count I. In the absence of such an order, the MDOR asserted that there can be no finding of contempt.

With respect to Count II, the MDOR argued the relief requested by the Plaintiffs is beyond the capacity of this Court to grant. It stated:

> With exceptions not presently applicable, a confirmed chapter 13 plans treats only the allowed amounts of claims as they existed on the petition date of a case. The plan does not treat post-petition additions to a liability, including interest that matures after the petition date. *See, e.g.*, 11

7

>U.S.C. § 502(b)(2). After the discharge or conclusion of the case if no discharge is entered, the debtor remains liable for what has not been paid from the estate for a liability that has not been discharged. Bruning v. United States, 376 U.S. 358 (1964). In the context of postpetition interest, *Collier's on Bankruptcy* describes it as follows:
>
>>[I]nterest continues to accrue on all prepetition debt even if such interest cannot be charged against the estate. This is important in instances where a debt becomes nondischargeable. The effect of the intervening bankruptcy case was merely to delay payment of the interest on the nondischargeable debt and not to relieve that payment. In such a circumstance, since interest continues to accrue, it is unavailing for a codebtor or guarantor of debtor's debt to assert that the debtor's bankruptcy case might relieve them from the obligation of payment of interest on the codebtor guarantee. [citations omitted].

(footnotes omitted) (citing 4 *Collier on Bankruptcy* § 502.03[3][b] (15th ed. rev'd 2003).

Finally, with respect to Count III, the MDOR argued that it could not have violated the automatic stay because no stay existed, noting that it levied on a bank account in which the Debtor claimed no interest and it later released its levy and received no funds. In other words, the bank account was neither property of the estate nor property of the Debtor and was, therefore, unprotected by the automatic stay. Moreover, the Plaintiffs admitted that the co-debtor stay is not implicated.

Additionally, the MDOR asserted that the proposed injunctive relief is not necessary to ensure the feasibility of the Debtor's Third Amended Chapter 13 plan, observing that many of the Debtor's claimed expenses are no longer applicable in view of the foreclosure sale of their Property ("While there would be some rental living expense, the monthly homeowner expenses that existed thirteen months ago of approximately $3,347 no longer

8

exists."). It noted the following:

> Lawrence has an annual gross income of at least $116,100. In the past year, the Sarners' living expenses have been reduced, although the extent of the reduction has not been reported by the Debtor. If Lawrence were to enter into a payment agreement that at least addressed the portion of the liabilities for the Taxes at Issue that have accrued since the Petition Date, it would be a relatively modest amount (depending upon the term for what has accrued to date, probably a sum under $100 a month). That expense would not have any material adverse effect on the feasibility of the Plan.
>
> Alternatively, should Lawrence continue to refuse to address his responsibilities and MDOR renews its involuntary collection efforts, including a wage levy, the consequences would not be catastrophic for the Debtor and her Chapter 13 plan. To the extent that MDOR collects from Lawrence the amount owed for the Taxes at Issue as of the Petition Date, the claim against the Debtor would correspondingly be reduced. After accounting for the exemption contained in M.G.L. c. 62, § 55A, it might take tens [sic] weeks or so to pay off the liability in full, the MDOR Claim would have been paid in full and an amended plan could be filed reducing the monthly plan payment by perhaps between a quarter or a third, which would provide a means of paying the arrears in plan payments that might occur under these more extreme circumstances. During those times, of course, Lawrence might change his stance on entering a payment agreement with MDOR, and the final circumstances would be at some point in the middle of the extremes.

C. The Plaintiffs' Reply

The Plaintiffs attempted to overcome the MDOR's arguments by asserting that "the MDOR was levying Melissa's property." They added that "it seems clear that this court has full subject matter jurisdiction to enter an injunction and final judgment." They asserted that because they are both liable for the tax debt, the MDOR cannot attempt to collect the joint debt from assets that belong to Sarner. With respect to Count I, they stated:

> Allowing a creditor to collect, from a third party, a debt owed by a debtor in bankruptcy in a manner contrary to the debtor's plan should not be tolerated

9

> in circumstances such as the present because it interferes with the debtor's ability to comply with her obligations under the plan. Willful disregard of a debtor's plan – confirmed or not – ought rightly to be the subject of contempt, and the fact that a formal "order" has not yet entered ought not to make any difference where the time to object to the plan has long since passed.  Furthermore, the automatic stay is, itself, an "order", breach of which may invoke contempt remedies.

(citations omitted).

With respect to Count II, the Plaintiffs argued that an injunction is warranted:

> Lying in wait and then impatiently pouncing on Lawrence is unfair and inequitable when there is no reason to believe Melissa's plan will not be confirmed and the plan pays the MDOR the full amount it demanded in its Proof of Claim, which presumably includes interest.

> Thus, to the extent that the MDOR would want to collect additional interest or other amounts in excess of its Proof of Claim, the MDOR should be bound by the Proof of Claim and the plan, and enjoined from such collection efforts.

Finally, with respect to Count III, the Plaintiffs asserted that "even lawful actions can violate the stay if they are improperly coercive or harassing."  They reacted to the MDOR's references to payment agreements by arguing that

> Lawrence is quite willing to perform his obligations to MDOR; he is doing so by contributing to Melissa's chapter 13 plan payments, and the fact that his contributions are filtered through the chapter 13 trustee is irrelevant. Furthermore, he has a payment plan – he is contributing his fair share (as he and Melissa view it) to Melissa's plan, and the plan provides for payment in full of the exact amount stated by the MDOR in its Proof of Claim.

**IV. DISCUSSION**

A. Standards for Injunctive Relief

The legal standard applicable to the entry of a temporary restraining order or a preliminary injunction is well known and needs little explication.

10

> To obtain a temporary restraining order or a preliminary injunction, the plaintiff must demonstrate: 1) a substantial likelihood of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable balance of hardships, and 4) a fit (or lack of friction) between the injunction and the public interest. Nieves–Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

Valerio v. U.S. Bank, N.A., 716 F.Supp.2d 124, 127 (D. Mass. 2010); Samayoa v. Encore Credit Corp. (In re Samayoa), No. 11-1308, 2011 WL 5041756 at *2-3 (Bankr. D. Mass. Oct. 24, 2011).

    B. Analysis

Applying the legal standard to the undisputed facts, the Court finds that the Plaintiffs have failed to sustain their burden of proving entitlement to injunctive relief. In particular, the Plaintiffs failed to establish a likelihood of success on the merits where a confirmation order has not entered, the Debtor is not entitled to a discharge, and the automatic stay is inapplicable. The MDOR cannot be held in contempt of a confirmation order that has not entered and will not enter until such time as the Debtor files amended Schedules I and J. The MDOR cannot be enjoined from collecting a debt owed by a non-debtor from a bank account which is not property of the estate. The MDOR cannot violate the automatic stay because the automatic stay simply does not apply.

In Goldsby v. United States (In re Goldsby), 135 B.R. 611 (Bankr. E.D. Ark. 1992), the court considered a case with virtually identical facts to the instant case. In Goldsby, the debtor filed a Chapter 13 petition and obtained confirmation of a Chapter 13 plan. His plan

11

provided for payments to the IRS as a priority creditor. Despite knowledge of the pendency of the debtor's case, the IRS levied bank accounts and the earnings of his non-debtor spouse, who was a co-obligor with respect to tax debt owed the IRS. The court stated:

> An action to prohibit or restrain the collection of a tax against a non-debtor does not fall within the purview of title 11 simply by virtue of the tax debt being a joint liability with a debtor. *See* In re Hall, 123 B.R. 441, 444 (Bankr. N.D. Ga. 1990). The benefits and protection of title 11 apply only to those who choose to file a petition for relief under sections 301, 302, or 303. Id. Upon filing the petition, a person becomes a "debtor" entitled to certain protections under the Bankruptcy Code. . . . A debtor is a "person . . . concerning which a case under this title has been commenced." 11 U.S.C. § 101(12). In the instant case, only Mr. Goldsby chose to file a bankruptcy petition. Mrs. Goldsby has not filed a petition, and she is therefore not entitled to the protection afforded debtors under the Bankruptcy Code. *See* In re Harrison, 82 B.R. 557 (Bankr. D. Colo. 1987). Thus, but for a specific grant of authority, this Court has no jurisdiction to order relief with respect to collection of a debt against Mrs. Goldsby. *See* Johnson v. First National Bank of Montevideo, 719 F.2d 270, 273 (8th Cir.1983) ("[A] bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress. . . . Although a bankruptcy court is essentially a court of equity, . . . its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code.") (citations omitted).

In re Goldsby, 135 B.R. at 613. Additionally, the court determined:

> [P]laintiffs argue that inasmuch as Mr. Goldsby's plan provides for full payment of the taxes, the United States should be prohibited from seeking payment from persons jointly liable. This argument has previously been addressed and rejected by the Eighth Circuit. In Kelly v. Lethert, 362 F.2d 629 (8th Cir.1966), an officer of a corporation, a non-debtor, who was jointly liable with the corporate debtor, sought an injunction prohibiting the Internal Revenue Service from collecting the debt against him. One of the bases asserted for the injunction was that the United States could collect the taxes from the corporate bankruptcy estate. The Eighth Circuit decided that such considerations were "not material" to the appeal, stating that:

> It is, moreover, well settled that a taxpayer who is equally liable with another for the payment of accrued but unpaid tax, cannot avoid collection against himself on the ground that the Government should first collect it from the other party. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). * * *

Kelly, 362 F.2d at 635.

> It is apparent from the Bankruptcy Code and the case law that non-debtors are not protected from the IRS collection action. Aside from the co-debtor stays provided in sections 1201 and 1301, there is no provision protecting non-debtors or their property. On the other hand, Congress requires the Internal Revenue Service to collect taxes due. 26 U.S.C. § 6301; *see* 26 U.S.C. § 7601. This Court will not create an exception to the Bankruptcy Code where Congress has not seen fit to do so. *See* Laughlin, 912 F.2d at 200 ("[W]e have no basis here for dictating to the IRS the methods by which it may collect taxes. It is for Congress to impose upon the IRS the requirement of specifying the estates' upon which the notice of levy is to apply or to create a bankruptcy exception to the Anti-injunction Act.").

Goldsby, 135 B.R. at 614-15 (noting that the United States may only collect the tax once and that any funds collected from the non-debtor would have to reduce the debtor's liability).

In The Underwriters at Lloyd's, London v. Chancellor Corp. (In re Adley), 333 B.R. 587 (Bankr. D. Mass. 2005), this Court observed:

> In In re G.S.F. Corp., 938 F.2d 1467 (1st Cir.1991), the First Circuit stated: "This grant of equitable power is not unlimited. 'While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers . . . it is an *extraordinary exercise of discretion* to use that power to stay a third party action not involving the debtor.' " Id. at 1474 (citing In re Brentano's, Inc., 36 B.R. 90, 92 (S.D.N.Y.1984)) (emphasis supplied). The First Circuit added. "In the ordinary case involving an injunction against a third party action, there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it." 938 F.2d at 1474.

In re Adley, 333 B.R. at 690. The Court concludes that the relief the Plaintiffs seek through

13

their Emergency Motion would require this Court to exceed both its jurisdiction and its equitable powers.

## V. CONCLUSION

In view of the foregoing and upon consideration of the arguments advanced by counsel in the papers, whether or not specifically mentioned above, the Court shall enter an order denying the Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

                        By the Court,

                        *Joan N. Feeney* (signature)

                        Joan N. Feeney
                        United States Bankruptcy Judge

Dated: October 31, 2011
cc: David G. Baker, Esq., Stephen G. Murphy, Esq., Carolyn Bankowski, Esq.